## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ROBERT DAVIS, ET AL**                                **CIVIL ACTION**

**VERSUS**

**OLIN CORP., ET AL**                                  **NO. 22-00374-BAJ-RLB**

*Consolidated with*

**TIM FABRE, ET AL.**                                  **CIVIL ACTION**

**VERSUS**

**THE DOW CHEM. CO., ET AL.**                          **NO. 23-00361-BAJ-RLB**

**This filing applies only to** *Fabre et al v. The Dow Chem Co., et al*, **No. 23-00361**

### FIRST SUPERSEDING AND AMENDING
### COMPLAINT FOR DAMAGES – CLASS ACTION

NOW INTO COURT, through undersigned counsel come plaintiffs Tim Fabre, Nicole Fabre, and Kayla Lynn Dupont, (collectively, "Plaintiffs"), all of whom are appearing herein individually and on behalf of all others similarly situated, and all of whom are domiciled within the State of Louisiana, who pursuant to Fed. R. Civ. P. 15(a)(1) file this First Superseding and Amending Complaint for Damages—Class Action, which replaces and supersedes the Plaintiffs' original Petition for Damages—Class Action, as follows:

1.

Made defendants herein are the following:

a)      THE DOW CHEMICAL COMPANY ("DOW"), a corporation incorporated in the state of Delaware, with its principal business office in the State of Michigan, and licensed to do business in the State of Louisiana, which may be served through its

    registered agent for service of process, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

  b) THE CENTER FOR TOXICOLOGY AND ENVIRONMENTAL HEALTH, LLC ("CTEH"), a limited liability company with its principal business office located in the State of Arkansas and which is licensed to do business in the State of Louisiana, which may be served through its registered agent for service of process, Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

2.

This is a class action brought pursuant to Louisiana Code of Civil Procedure articles 591, *et seq.*, on behalf of a Class which consists of all residents of Iberville Parish, persons working within Iberville Parish, and other persons present within Iberville Parish, and who sustained direct injury or damages and/or whose daily activities or normal movement were impacted as the result of a chlorine release by Blue Cube Operations LLC ("Blue Cube") that occurred on or about April 18, 2022, in Plaquemine, Louisiana, and whose injuries and damages were caused, increased, and/or exacerbated because of the fault of DOW and CTEH in improperly monitoring the nature, scope, and extent of the release, as well as failing to properly determine pertinent information about the release and/or failing to disclose and/or misrepresenting pertinent information about the release to the public and to local, state, and federal agencies and officials (collectively, "government officials") who relied upon the information and data provided by DOW and CTEH in taking actions necessary to protect the public and environment.

3.

DOW and CTEH removed this case from the state court in which the Plaintiffs filed this suit, invoking the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(d). Venue is proper in the Middle District of Louisiana because it is the district court embracing the location where the state court action was pending, and because the wrongful acts of DOW and CTEH which are set forth in this Complaint occurred in Iberville Parish, which is within this judicial district.

4.

DOW and CTEH are liable individually, jointly, and *in solido* unto Plaintiffs and the Class of all others similarly situated for all elements of damages allowed by Louisiana law, whether past, present, or future damages, in an amount that is just and reasonable in the premises for the following reasons.

5.

On or about April 18, 2022, at approximately 8:24 pm, a fire and chlorine release occurred at the Olin Blue Cube Operations chlorine facility, which is located within an industrial complex owned and operated by DOW in Plaquemine, Louisiana. The release was almost immediately identified and classified by DOW as a "Category C" release, which meant that there was a recognized impact to the community outside the fence line of the DOW facility.

6.

Plaintiffs live in Iberville Parish, Louisiana, and were exposed to chlorine as a result of the release.

7.

Pursuant to the Site Services Agreement between Blue Cube and DOW, DOW undertakes and assumes responsibility for nearly all aspects of emergency planning and response for incidents

that occur at the Blue Cube facility, including the chlorine release that occurred on April 18, 2022. That Site Services Agreement also purports to prohibit Blue Cube from participating in or undertaking certain response activities, and instead the agreement purports to give DOW sole authority to take those actions in the event of an emergency such as the chlorine release on April 18, 2022.

8.

DOW did in fact undertake and assume responsibility for the emergency response actions in response to the April 18, 2022 chlorine release, including the responsibility for responding to the fire and chlorine release, communicating with government officials to report the occurrence of the release, performing air quality monitoring during the course of the release, and providing updates and information throughout the course of the release to the public, the media, and government officials.

9.

As a result of the chlorine release and DOW's initial communications with government officials, certain roads were closed, and the Plaintiffs, as well as other workers, residents, and persons in the vicinity, were ordered by the Iberville Parish Sheriff's Office to either shelter in place or remain confined to their places of employment or homes for a period of time. At approximately 8:57 pm, emergency sirens in and around Plaquemine were activated, providing additional notice of the shelter-in-place order.

10.

As part of its assumed responsibility for performing air quality monitoring under the Site Services Agreement, DOW utilized and collected data from its own air monitors and also retained CTEH as a contractor to perform community monitoring.

11.

DOW and CTEH failed to properly perform their responsibilities to monitor the community for chlorine. The number and location of monitors in the Plaquemine community was inadequate and failed to correctly and accurately detect the levels of chlorine outside the fence line of the DOW facility. DOW also removed monitors from the community, where they were intended to be used for the purpose of detecting the chlorine levels outside the DOW fence line, and instead placed them inside the DOW fence line.

12.

DOW and CTEH purportedly provided their air quality monitoring data to government officials during the course of the release. Based on the information and data provided by DOW and CTEH, the decision was made to lift the shelter in place at approximately 12:08 am on April 19, 2022, or less than four hours after the release began.

13.

In making the decision to lift the shelter in place order, government officials relied upon the data and information provided to them by DOW and CTEH. That data and information purportedly showed that at the time the shelter in place was lifted, there were no longer any detections of chlorine outside DOW's fence line at or above the level of 1 part per million (ppm).

14.

However, at the time the decision to lift the shelter in place order was made, the government officials specifically instructed DOW that if DOW and/or CTEH were to detect chlorine at or above 1 ppm outside the DOW fence line, DOW was to immediately notify the government officials so they can use that information to determine whether and for how long to reinstate a shelter in place or take other measures to protect the health, safety, and welfare of members of the community who were impacted by the release.

15.

Shortly after the shelter in place order was lifted at approximately 12:08 am on April 19, 2022, and throughout that night until the next morning, the air monitoring data that DOW and CTEH collected showed chlorine levels that greatly exceeded 1 ppm. However, DOW did not communicate those detections to the government officials as they had specifically instructed DOW to do. As a result of DOW's fault in failing to notify the government officials of these readings, the shelter in place order was not reinstated, even though the level of chlorine in the community exceeded levels at which the government officials would have taken further actions to protect the community from the dangers of extended exposure to chlorine if they had been provided with accurate information and data.

16.

By virtue of the shelter in place order being lifted in reliance upon the inaccurate and incomplete information and data that DOW and CTEH provided to the government officials and other wrongful conduct by these defendants, the Plaintiffs and other individuals located in the community surrounding DOW's facility were misled to believe that there was no threat or a reduced threat posed by the chlorine release. However, as a direct result of the misrepresentations and omissions made by DOW and CTEH to the public and government officials as well as other wrongful conduct by these defendants, the Plaintiffs and other similarly situated persons were exposed to chlorine that they would not have otherwise been exposed to, and the shelter in place was lifted much earlier than it should have been and otherwise would have been lifted and/or not reinstated when it would have otherwise been reinstated had DOW and CTEH provided accurate and complete information, and while there was still an active and ongoing chlorine release which

continued to present a threat to the health, safety, and welfare of the Plaintiffs and other similarly situated individuals.

17.

The open lines on the system where the chlorine release occurred were not capped until April 19, 2022, at approximately 5:22 pm, or approximately 21 hours after the release began and over 17 hours after the shelter in place order was lifted.

18.

As a direct result of the misrepresentations, omissions, and other wrongful conduct by DOW and CTEH, the Plaintiffs and others similarly situated were exposed to harmful and dangerous levels of chlorine, including after the shelter in place order was prematurely lifted at 12:08 am on April 19, 2022, which exposure the Plaintiffs and others similarly situated could have mitigated and/or avoided by evacuating, continuing to shelter in place, and/or taking other appropriate measures that would have been recommended or ordered by government officials but for DOW's and CTEH's fault as described herein and other wrongful conduct.

19.

As a result of the above-described acts by DOW and CTEH, Plaintiffs and the Class of others similarly situated suffered damages, including but not limited to illness and injury as a result of their exposure to chlorine after the shelter in place order was lifted, which caused them to suffer various medical conditions including headaches, dizziness, sore throats, difficulty breathing, coughing, nausea, and other medical conditions that required treatment and/or hospitalization. It also caused inconvenience and interference with the use of their property.

20.

DOW and CTEH were at fault in the following particulars:

a) By failing to properly monitor for the presence of chlorine following the release in the areas where the Plaintiffs and others in the Iberville Parish community lived;

b) By failing to communicate, withholding, and/or misrepresenting accurate information and data regarding air quality monitoring and chlorine detection levels to government officials who relied upon that information in taking steps to protect the health, safety, and welfare of the Plaintiffs and others located in the Iberville Parish community;

c) By misleading the Plaintiffs and others similarly situated, through misrepresentations and omissions made to the public and to government officials, into believing that the chlorine release had been contained and was no longer a harm to the health, safety, and welfare of the Iberville Parish community when that was not the case;

d) By failing to properly protect the Plaintiffs and others located in the Iberville Parish community from the release of and continued exposure to chlorine; and

e) Other acts of fault to be proven at the trial of this matter.

21.

As result of the aforementioned wrongful acts and fault by the defendants DOW and CTEH, through the actions or omissions of their agents, employees, or someone for whom they are answerable, DOW and CTEH are liable individually, jointly, and *in solido* to the Plaintiffs and the Class of others similarly situated for all damages sustained as are reasonable in the premises, plus legal interest from the date of judicial demand until paid and for all costs of this suit, including but not limited to the following:

a) Exposure to noxious fumes and odors;

b)  Physical pain, suffering and injuries;

c)  Past medical expenses;

d)  Future medical expenses;

e)  Emotional and physical distress;

f)  Inconvenience, annoyance, and frustration; and

g)  Other damages that will be shown at the trial of this matter.

22.

This action is appropriate for determination through the Louisiana and/or federal class action procedure (La. Code Civ. Proc. art. 591, *et seq*. and/or Fed. R. Civ. Proc. 23) for the following nonexclusive reasons:

A.  The large number of claimants present a level of numerosity better handled through the class action procedure as opposed to mass joinder of individual claims.

B.  Common issues of law and fact pertaining to the determination of fault and liability predominate over the individual issues or quantum.

C.  The determination of fault and the basis for assessment of damages may be made in a class action.

D.  The named Plaintiffs have sustained damages of the nature described hereinabove and are suitable representatives for the class.

E.  The class may be defined objectively in terms of ascertainable criteria, such that the Court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in these proceedings.

F.      Plaintiffs are represented by skilled attorneys who are experienced in the handling of mass tort/class actions and who may be expected to handle this action in an expeditious and economical manner to the best interests of all the class members.

G.      The class action procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented.

**WHEREFORE**, Plaintiffs, pray:

1.      That after due proceedings are had, this action be certified as a class action pursuant to the provisions of La. Code Civ. Proc. art. 591, *et seq.* and/or Fed. R. Civ. Proc. 23 in the respects alleged herein, for the purposes of determining issues common to the class, including liability for damages.

2.      That upon certification of the Class, the Court shall order the formulation of a suitable management plan pursuant to La. Code Civ. Proc. art. 592(E) and/or Fed. R. Civ. Proc. 23(d).

3.      That after due proceedings are had, there be judgment herein in favor of the Plaintiffs and the Class of others similarly situated, and against the defendants, THE DOW CHEMICAL COMPANY and THE CENTER FOR TOXICOLOGY AND ENVIRONMENTAL HEALTH, LLC, for all damages as are reasonable in the premises, plus legal interest from the date of judicial demand until paid, all costs of this suit, and for all other just and equitable relief permitted by law.

[*SIGNATURES ON NEXT PAGE*]

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys And Counselors At Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
(225) 932-9221; (225) 932-9286 (fax)

*s/ Roy Bergeron, Jr.*
By:   Eulis Simien, Jr., Bar # 12077
       eulissimien@simien.com
       Jimmy Simien, Bar # 1598
       jimmysimien@simien.com
       Roy Bergeron, Jr., Bar # 33726
       roybergeron@simien.com

       and

*s/ Patrick W. Pendley*
Patrick W. Pendley (#10421)
PENDLEY, BAUDIN & COFFIN, L.L.P.
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana 70764-0071
Telephone: (225) 687-6396
Facsimile: (225) 687-6398
Email: pwpendley@pbclawfirm.com